| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| | |
| *ex rel.* VERITY INVESTIGATIONS, LLC, | **ORIGINAL COMPLAINT FOR** |
| | **VIOLATIONS OF THE FEDERAL** |
| *Plaintiff/Relator*, | **FALSE CLAIMS ACT, 31 U.S.C.** |
| | **§ 3729** *et seq.* |
| v. | |
| | **FILED UNDER SEAL PURSUANT** |
| VELUX GREENWOOD LLC, | **TO 31 U.S.C. § 3730(b)(2)** |
| | |
| VELUX AMERICA LLC, | **DO NOT PLACE IN PRESS BOX** |
| | |
| *Defendants.* | **Jury Trial Demanded** |

## *QUI TAM* COMPLAINT

### I.    INTRODUCTION

1.    This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $8.55 million (plus mandatory trebling) that Defendants wrongfully obtained in the form of two federal guaranteed loans by falsely certifying that they were small business concerns. Those loans were later forgiven, and the federal government paid the bill.

2.    The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3.    In April 2020, the SBA authorized a first series of PPP loans, which are known as "First Draw" PPP loans. This case involves false applications for First Draw PPP loans.

4.    The PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small."

5.    For First Draw PPP loans, applicants were required to certify that they (both the applicant and its affiliates) met the size standard—(a) collectively employed 500 or fewer persons, (b) met the SBA employee-based or revenue-based industry size standards, or (c) met the SBA alternative size standard that the maximum tangible net worth of the business is not more than $15 million and the average net income for two fiscal years before the date of the application is not more than $5 million.

6.    The applicants were also required to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

7. Defendants falsely certified to the SBA that they met the size standard for a small business and had an economic need for the loan. As a direct result of those false statements, Defendants obtained First Draw PPP loans totaling $8,551,452, which were later forgiven in substantial part.

8. Relator is an outside investigative company that detected Defendants' fraud by reviewing Defendants' parent company's consolidated financial statements and Forms 5500 that one of Defendant's employees' 401(k) plan filed with the Department of Labor. Those statements demonstrate that Defendants and their affiliates had tangible net worth and net income that far exceeded the $15 million and $5 million thresholds, respectively, and employed more than 1,000 employees during the relevant time period.

## II.    THE PARTIES

9. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

10. Defendant Velux Greenwood LLC ("Velux Greenwood") is a South Carolina limited liability company with its principal place of business in Greenwood, South Carolina.

11. Defendant Velux America, LLC ("Velux America") is a Massachusetts limited liability company with its principal place of business in Fort Mill, South Carolina.

## III.    JURISDICTION AND VENUE

12. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

13. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

14. Venue is proper, and this Court has personal jurisdiction over Defendants, because Defendants are "found" in this District. 31 U.S.C. § 3732(a).

## IV.   THE FALSE CLAIMS ACT

15.     The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

16.     A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

17.     Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

18.     In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

19.     Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

20.     No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

21.     The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

22.     The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

23.     The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

24.     False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V.      NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

25.     On information and belief, no "public disclosure" has been made of Defendants' false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

26.     On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

27.     Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

28.     Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has

"connected the dots" between (a) Defendants' consolidated financial statements, (b) the Form 5500 disclosures, and (c) Defendants' false certifications for the First Draw PPP loans.

29.     Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI.     THE FIRST DRAW PPP LOAN PROGRAM

30.     To be eligible for a First Draw PPP loan, borrowers were required to meet one of the following criteria: "employs not more than the greater of" (1) "500 employees; or" (2) "if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, . . . operates;" or (3)  meets the "alternative size standard" as of March 27, 2020 with (a) "maximum tangible net worth of the applicant is not more than $15,000,000"; and (b) "the average net income after Federal income taxes (excluding any carry-over losses) of the applicant for the 2 full fiscal years before the date of the application is not more than $5,000,000." 15 U.S.C. §§ 632(a)(5), 636(a)(36)(B).

31.     The SBA's website explained "who may qualify" for a First Draw PPP loan. This was explained in an overview page of the website[1] and in the online "Frequently Asked Questions" document available on the website.[2]

32.     The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)."[3]

---

[1] SMALL BUSINESS ADMINISTRATION, First Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan.
[2] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of April 29, 2020).
[3] SMALL BUSINESS and ADMINISTRATION, FAQ for PPP Borrowers Lenders at 2 (as of April 29, 2020).

33. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[4]

34. That regulation defined affiliation broadly:

a. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[5]

b. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[6]

c. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual,

[4] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[5] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[6] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[7]

    d.    Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[8]

    e.    Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[9]

35.    The SBA required borrowers to submit a First Draw borrower application form (SBA Form 2483) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

36.    The SBA Form 2483 required the borrower to state their "Number of Employees."

37.    The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant . . . employs no more than the greater

---

[7] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[8] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

of 500 or [*sic*] employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry."

38.     The SBA Form 2483 then required the applicant's authorized representative to certify eligibility by signing a statement that "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

39.     The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

40.     The SBA guaranteed 100% of the outstanding balance of Defendants' First Draw PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. DEFENDANTS FALSELY CERTIFIED TO THE SBA THEIR COMPLIANCE WITH THE FIRST DRAW PPP LOAN SIZE REQUIREMENTS

### A. BACKGROUND: DEFENDANTS AND NON-DEFENDANT ENTITIES ARE AFFILIATES

41. Defendant Velux Greenwood LLC ("Velux Greenwood") is a limited liability company registered in South Carolina with its principal place of business at 450 Old Brickyard Road, Greenwood, SC 29649.[10]

42. Velux Greenwood can be validly served with process at 2 Office Park Court, Suite 103, Columbia, SC 29223.[11]

43. Defendant Velux America LLC ("Velux America") is a limited liability company registered in Massachusetts with its principal place of business at 104 Ben Casey Drive Fort Mill, SC 29708.[12]

44. Velux America can be validly served with process at 2 Office Park Court, Suite 103, Columbia, SC 29223.[13]

45. Velux Greenwood and Velux America manufacture skylights and roof windows. Velux Greenwood's and Velux America's affiliated companies were founded in 1909 by Villum Kann Rasmussen, a Danish engineer. By 1975, Rasmussen had built a group of companies that had expanded throughout Europe and to the United States and Canada.[14]

---

[10] South Carolina Business Entities Online, Entity ID 00334407; South Carolina Department of Commerce, "Company investing $26 million into the expansion" (June 18, 2020, https://www.sccommerce.com/news/velux-greenwood-llc-expanding-operations-greenwood-county.

[11] South Carolina Business Entities Online, Entity ID 00334407.

[12] South Carolina Business Entities Online, Entity ID 00369910; Velux USA Website, https://www.veluxusa.com/our-company.

[13] South Carolina Business Entities Online, Entity ID 00369910.

[14] Velux USA Website, https://www.veluxusa.com/our-company.

46.     VKR Holding A/S ("VKR") is the Danish parent company of Velux Greenwood and Velux America.[15]

47.     As of 2019, VKR identified dozens of entities located throughout Europe as its subsidiaries.[16]

48.     As of 2019, VKR identified the following entities as its subsidiaries in the United States:[17]

    a)  TVC Holdings LLC
    b)  VE LUX America LLC
    c)  VE LUX Design and Development USA LLC
    d)  VE LUX Greenwood LLC
    e)  VE LUX Group USA Inc.
    f)  VE LUX Sky Forwarding LLC
    g)  VE LUX Solutions LLC

49.     On information and belief, VKR, Velux Greenwood, Velux America, and the entities discussed in paragraphs 46-47, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

**B.      VELUX GREENWOOD'S FALSE STATEMENT TO OBTAIN A FIRST DRAW PPP LOAN**

50.     In 2020, Velux Greenwood submitted a borrower application for a First Draw PPP loan.

51.     Velux Greenwood submitted its borrower application, SBA Form 2483, to Wells Fargo Bank, N.A. ("Wells Fargo) in Sioux Falls, South Dakota.

---

[15] VKR 2019 Annual Report at 54 (identifying Velux Greenwood and Velux America as subsidiaries); VKR 2016 Annual Report at 41 (identifying VKR as having a 100% ownership share of Velux Greenwood and Velux America).
[16] VKR 2019 Annual Report at 53-54.
[17] VKR 2019 Annual Report at 54.

52.     In its SBA Form 2483, Velux Greenwood listed its address as 250 Old Brickyard Road, Greenwood, SC 29648.

53.     In its SBA Form 2483, Velux Greenwood certified that it and its affiliates met the small business size standard by having (1) no more than 500 employees, (2) meeting the SBA industry size standards, or (3) meeting the SBA alternative size standard.

54.     Velux Greenwood is classified under NAICS code 321911, which covers the industry for Wood Window and Door Manufacturing. The SBA industry size standard for NAICS code 321911 is 1,000 employees. *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

55.     In its SBA Form 2483, Velux Greenwood represented that it and its affiliates had 415 employees—under the 1,000-employee SBA industry size standard needed to be eligible to apply.

56.     Velux Greenwood's certification in SBA Form 2483 that it met the size standards for a First Draw PPP loan was false. Velux Greenwood and its domestic and foreign affiliates had (1) far more than 1,000 employees in 2019 and 2020; (2) a maximum tangible net worth more than $15,000,000, **and** (3) more than $5,000,000 in average net income for the 2 full fiscal years before the date of its application.

57.     Velux Greenwood deliberately ignored the fact that, together with its affiliates, it did not meet the SBA size standards for obtaining a First Draw PPP loan. Velux Greenwood signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

58.     On or about May 11, 2020, Velux Greenwood was approved for a First Draw PPP loan in the amount of $3,940,625 by lender Wells Fargo.

59.     The U.S. government paid lender Wells Fargo a lender's processing fee of 1% of the $3,940,625 loan, in the amount of $39,406.25.[18]

60.     On or about June 11, 2021, the U.S. government forgave 100% of Velux Greenwood's First Draw PPP loan, plus interest, in the amount of $3,982,406.42.

C.     **VELUX AMERICA'S FALSE STATEMENT TO OBTAIN A FIRST DRAW PPP LOAN**

61.     In 2020, Velux America submitted a borrower application for a First Draw PPP loan.

62.     Velux America submitted its borrower application, SBA Form 2483, to Wells Fargo.

63.     In its SBA Form 2483, Velux America listed its address as 250 Old Brickyard Road, Greenwood, SC 29648.

64.     In its SBA Form 2483, Velux America certified that it and its affiliates met the small business size standard by having (1) no more than 500 employees, (2) meeting the SBA industry size standards, or (3) meeting the SBA alternative size standard.

65.     Velux America is classified under NAICS code 423390, which covers the industry for Metal Service Centers and Other Construction Material Merchant Wholesalers. The SBA industry size standard for NAICS code 423390 is 100 employees. *See* 13 C.F.R. § 121.201 (effective Nov. 20, 2019 to May 1, 2022).

66.     In its SBA Form 2483, Velux America represented that it and its affiliates had 256 employees—under the 500-employee limit needed to be eligible to apply.

---

[18]     Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

67. Velux America's certification in SBA Form 2483 that it met the size standards for a First Draw PPP loan was false. Velux America and its domestic affiliates had far more than 500 employees in 2019 and 2020. Velux and its domestic and foreign affiliates had a maximum tangible net worth more than $15,000,000 **and** more than $5,000,000 in average net income after Federal income for the 2 full fiscal years before the date of its application.

68. Velux America deliberately ignored the fact that, together with its affiliates, it did not meet the SBA size standards for obtaining a First Draw PPP loan. Velux America signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

69. On or about May 1, 2020, Velux America was approved for a First Draw PPP loan in the amount of $4,610,827.00 by lender Wells Fargo.

70. The U.S. government paid lender Wells Fargo a lender's processing fee of 1% of the $643,011 loan, in the amount of $46,108.27.[19]

71. On or about June 11, 2021, the U.S. government forgave 100% of Velux America's First Draw PPP loan, plus interest, in the amount of $4,661,230.29.

**D.    DEFENDANTS' FALSE STATEMENT BASED ON LACK OF ECONOMIC NEED**

72. Defendants each certified in their SBA Forms 2483 that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

73. The SBA's FAQ document stated that "[b]orrowers must make this certification in good faith, taking into account their current business activity and their ability to access other

---

[19]    Paycheck    Protection    Program    (PPP)    Information    Sheet:    Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet. pdf.

sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business." [20]

74.     More specifically, the SBA's FAQ document contemplated whether "businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan." [21]

75.     In response to that question, the SBA's FAQ document stated that "it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith."[22]

76.     Defendants' parent, VKR, had net worth over **$2 billion** in 2019 and 2020. *See* Section VII.F, *infra.*

77.     On information and belief, at the time of Defendants' loan applications, Defendants' parent VKR had access to the capital markets.

78.     The liquidity of Defendants' parent, and its access to the capital markets, give the lie to Defendants' false statement that the PPP loan was necessary to support Defendants' operations.

79.     Defendants deliberately ignored the fact that, together with their affiliates, they did not meet the economic need requirement. Each Defendant signed its false SBA Form 2483 with knowledge of, or reckless disregard for, the truth.

---

[20] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 11 (as of April 23, 2020), https://www.sba.gov/sites/default/files/2023-03/Paycheck-Protection-Program-Frequently-Asked-Questions_04%2023%2020.pdf.
[21] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 11 (as of April 23, 2020), https://www.sba.gov/sites/default/files/2023-03/Paycheck-Protection-Program-Frequently-Asked-Questions_04%2023%2020.pdf.
[22] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 11 (as of April 23, 2020), https://www.sba.gov/sites/default/files/2023-03/Paycheck-Protection-Program-Frequently-Asked-Questions_04%2023%2020.pdf.

### E. EVIDENCE OF MORE THAN NUMBER OF EMPLOYEES

80.     In its SBA Form 2483, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

81.     Velux America maintained a 401(k) retirement plan for its employees (the "Velux America Employee Benefits Plan").

82.     The Velux America Employee Benefits Plan was a "single employer" plan, meaning that it provided pension benefits solely to the employees of one employer.[23] That employer was Velux America.[24]

83.     In 2019 and 2020, the Velux America Employee Benefits Plan had the following legal name: Velux America LLC 401(k) Retirement Plan.

84.     Each year, the Velux America Employee Benefits Plan was required to file a Form 5500 with the U.S. Department of Labor. That form required the Velux America Employee Benefits Plan to state the "number of active participants" at the beginning and end of the plan year. Form 5500 instructed that "active participants" are "individuals who are currently in employment covered by the plan and who are earning or retaining credited service under the plan."[25]

85.     In 2019, the Velux America Employee Benefits Plan reported 663 active participants at the start and 701 active participants at the end of the year.[26]

86.     In 2020, the Velux America Employee Benefits Plan reported 699 active participants at the start and 724 active participants at the end of the year.[27]

---

[23] The plan's Forms 5500 for 2019 and 2020 check the box in section A attesting that it was "a single-employer plan."

[24] The plan's Forms 5500 for 2019 and 2020 list the "employer" as "Velux America LLC." The Forms 5500 also give the same Employer Identification Number. The address is listed as PO Box 5001, Greenwood, SC 29648-5001.

[25] Instructions for Form 5500.

[26] Form 5500 (2019).

[27] Form 5500 (2020).

87.     Upon information and belief, the "active participants" listed in Velux America's Forms 5500 was significantly less than Velux America's true number of employees.

88.     The number of "active participants" reported in the Velux America Employee Benefits Plan excluded multiple categories of employees. Upon information and belief, foreign employees are typically not eligible to participate in U.S. 401(k) plans under the terms of those plans.

89.     Upon information and belief, the number of "active participants" reported in the Velux America Employee Benefits Plan excluded the total number of employees of Velux America's domestic and foreign affiliates.

90.     Defendant's affiliate VKR's 2019 annual financial report indicates the companies in Defendant's corporate group collectively had 16,000 employees in 2019.[28]

91.     Defendant's affiliate VKR's 2020 annual financial report indicates the companies in Defendant's corporate group collectively had 15,400 employees in 2020.[29]

92.     If Defendants had counted their affiliates' employees in their First Draw PPP loan applications, they would have reported far more than the 500-employee and 1,000-employee limits in each application.

93.     On information and belief, Defendants' and their affiliates' payroll records from 2019 and 2020 will confirm what Defendants always knew—that they and their affiliates collectively employed well over 500 and 1,000 employees throughout the time period 2019–2020.

---

[28] VKR 2019 Annual Report at 4.
[29] VKR 2019 Annual Report at 5.

94.     Defendants were not eligible for First Draw PPP loans under the SBA's alternative size standard. As of March 27, 2020, they and their affiliates had (1) maximum tangible net worth of the business more than $15 million; **and** (2) average net income for the two full fiscal years before the date of the application more than $5 million. Defendants would not have been eligible if they failed either prong of the alternative size standard. Defendants failed both.

95.     Defendant and its affiliates had a maximum tangible net worth of more than $15 million in FY2019 and FY2020. Defendant's affiliate VKR's 2020 annual financial report demonstrates a maximum tangible net worth of over **$2.33 billion** as of December 30, 2019 and **$2.76 billion** as of December 30, 2020. These figures are far above the $15 million dollar threshold.[30]

| Unit: DKK (in Millions) | 12/30/2020 | 12/30/2019 |
|---|---|---|
| **Total Assets** | **27,334** | **23,812** |
| Less: Total Liabilities | (4,581) | (3,875) |
| **Net Worth** | **22,753** | **19,937** |
| Less: Intangible Assets | (1,461) | (1,656) |
| Less: Investments in Associates | (299) | (306) |
| Less: Other Investments | (2,533) | (2,000) |
| Less: Other Long-term Receivables | (19) | (19) |
| Less: Deferred Tax Assets | (157) | (178) |
| Less: Prepayments | (220) | (229) |
| **Tangible Net Worth** | **18,064** | **15,549** |
| Exchange Rate | 1 DKK = 0.152952 USD | 1 DKK = 0.149925 USD |
| **Tangible Net Worth (in USD)** | $    **2,762,924,928** | $    2,331,183,825 |

96.     Defendant's affiliate VKR'S 2019 annual financial report demonstrates net income of DKK 1,785 million as of December 31, 2018 and DKK 3,075 million as of December 31, 2019.

---

[30] VKR 2020 Annual Report at 17.

These figures show an average net income of **$371.75 million**—far greater than the $5 million threshold.[31]

97.     Given the tangible net worth and total comprehensive income of their affiliates, Defendants could not have qualified for a First Draw PPP loan under the SBA's alternative size test.

**FIRST CAUSE OF ACTION**
**Submitting False Claims for Payment**
**31 U.S.C. § 3729(a)(1)(A)**

98.     Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

99.     Defendants violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of First Draw PPP loans.

100.     Each Defendant's knowingly false claim in its SBA Form 2483 and/or SBA Form 2483-SD was material to the lender's decisions to issue the First Draw PPP loans and was material to the SBA's decisions to forgive those loans and repay the lender.

101.     But for Defendants' knowingly false claims, the lender would not have issued the loans and the SBA would not have forgiven them.

102.     Each First Draw PPP loan that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

103.     Each First Draw PPP loan that Defendants obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's

---

[31] VKR 2019 Annual Report at 41.

100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

104.    The Government later reimbursed the lender almost 100% of the amounts of Defendants' First Draw PPP loans, with interest.

**SECOND CAUSE OF ACTION**
**Creating a False Record or Statement Material to a False Claim**
**31 U.S.C. § 3729(a)(1)(B)**

105.    Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

106.    Defendants violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, their SBA Forms 2483 and SBA Forms 2483-SD and included certifications—to support false claims submitted to the lender for approval of First Draw PPP loans.

107.    Defendants' knowingly false records and statements were material to the lender's decisions to issue the First Draw PPP loans and were material to the SBA's decisions to forgive each loan and repay the lender.

108.    But for Defendants' knowingly false records and statements, the lender would not have issued the loans and the SBA would not have forgiven them.

**PRAYER FOR RELIEF**

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained  (including the full amount of the forgiven First Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully submitted,

ROBINSON GRAY STEPP & LAFFITTE, LLC


By: s/Beth B. Richardson
      Beth B. Richardson, Fed. ID No. 9335
      PO Box 11449
      Columbia, SC 29211
      Telephone: 803.231.7819
      Facsimile: 803-929-0300
      brichardson@robinsongray.com

      Stephen Shackelford, Jr. *(to seek pro hac vice)*
      Steven M. Shepard *(to seek pro hac vice)*
      **SUSMAN GODFREY L.L.P.**
      One Manhattan West, 50th Floor
      New York, NY 10001
      Telephone: (212) 336-8330
      Facsimile: (212) 336-8340
      sshackelford@susmangodfrey.com
      sshepard@susmangodfrey.com

      ***Attorneys for Relator Verity Investigations, LLC***

Columbia, South Carolina
February 28, 2025